UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VENZELLE ANTOINE,

Petitioner,

v.

BRUCE SCOTT,

Respondent.

Case No. C26-2507-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He appears pro se and filed this 28 U.S.C. § 2241 habeas petition, challenging his immigration detention as lacking a statutory basis, in violation of his due process rights under the Fifth Amendment.[1] *See* Dkt. 5. He seeks release from custody, a return of his personal property, and injunctive relief related to any future redetention. *Id.* at 3. The United States, represented by counsel, appeared and filed a return to the petition, Dkt. 10, together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Freite Subero, Dkt. 11 ("Subero Decl."), and

[1] Petitioner named "Bruce Scott, Warden Northwest ICE Processing Center" as the sole Respondent to this action, and the United States of America as an "interested non-party."

their counsel Michelle Lambert, Dkt. 12 ("Lambert Decl."). Petitioner filed a traverse in reply. Dkt. 14.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 5, for the reasons set forth herein.[2]

## I. BACKGROUND

Petitioner is a native of the Bahamas and a citizen of Haiti. In 2010, U.S. Citizenship and Immigration Services ("USCIS") received a Petition for [Noncitizen] Relative (Form I-130) filed on Petitioner's behalf, which was approved on September 9, 2010. Subero Decl., ¶¶ 3-4. On January 19, 2012, Petitioner was admitted to the United States as a lawful permanent resident. *Id.* ¶ 5.

On September 8, 2025, Petitioner was convicted in the U.S. District Court for the Southern District of Florida for the crime of "False Statement During a Firearms Purchase," in violation of 18 U.S.C. § 922(a)(6). *Id.* ¶ 6; *see* Lambert Decl., ¶ 2. Ex. A (Judgment in a Criminal Case). Petitioner was sentenced to six months imprisonment. *Id.*

Petitioner served his sentence at the Federal Detention Center ("FDC") in SeaTac, Washington. Dkt. 14 at 21. ICE's Office of Enforcement and Removal Operations ("ERO") lodged an immigration detainer against Petitioner with the FDC on February 18, 2026, once "Petitioner came to the attention of ERO Seattle during DHS record checks[.]" Subero Decl., ¶ 7.

On March 10, 2026, ICE interviewed Petitioner after he was released from FDC custody, during which Petitioner answered questions regarding his citizenship and provided his fingerprints. Lambert Decl., ¶ 2, Ex. B at 3-4. Thereafter, ICE issued Petitioner a Notice to

---

[2] Petitioner has a pending Motion to Appoint Counsel. *See* Dkt. 6. Because Petitioner has succeeded in part on the merits of his petition while appearing pro se, his pending motion is DENIED as moot.

Appear ("NTA"), which charged him as being removable from the United States under Section 237(a)(2)(C) of the Immigration and Nationality Act ("INA"). *Id.* ¶ 8; *see* Lambert Decl., ¶ 2, Ex. E at 2. The NTA specifically references Petitioner's September 8, 2025 conviction as one of the bases for removability. Lambert Decl., ¶ 2. Ex, E at 2, 5.

On April 1, 2026, Petitioner moved the immigration court, through counsel, to terminate his removal proceedings. Subero Decl., ¶ 10. The following day, an IJ found Petitioner removable as charged, denied Petitioner's motion to terminate proceedings, and granted Petitioner's continuance of the hearing to prepare applications for relief from removal. *Id.* ¶ 11.

On April 20, 2026, the immigration court granted Petitioner's attorney's motion to withdraw, which led to the immigration court continuing Petitioner's case for him to retain other counsel. *Id.* ¶ 12. On April 30, 2026, Petitioner appeared in immigration court pro se and was granted another continuance. *Id.* ¶ 13.

Petitioner filed an application for cancellation of removal on June 9, 2026. *Id.* ¶ 14.

On June 22, 2026, an immigration judge denied Petitioner's application for relief from removal and ordered Petitioner removed to Haiti. *Id.* ¶ 15. Petitioner filed an appeal of the removal order with the Board of Immigration Appeals ("BIA"), which remains pending. *Id.* ¶ 16. Officer Subero asserts that Petitioner will not be removed while Petitioner's appeal is pending but is "unaware of any other legal impediments to removal and intends to pursue Petitioner's removal to Haiti in the normal course." *Id.* ¶ 17. Petitioner has not had a bond hearing and is not scheduled to attend one. *Id.* ¶ 18.

Petitioner has been in immigration detention since March 10, 2026. He filed the instant petition on September 16, 2026. Dkt. 5.

//

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner raises two claims. First, he asserts that he is detained "without statutory authority in violation of [the] due process clause of the Fifth Amendment." Dkt. 5 at 3. He also asserts that his "continued detention without an individualized custody determination violates the due process [clause] of the Fifth Amendment." *Id.*

Respondents contend that 8 U.S.C. § 1226(c) provides the statutory authority for Petitioner's mandatory detention, and that his detention also comports with due process when assessed under the framework articulated in *Martinez v. Clark*, C18-1669-RAJ-MAT, 2019 WL 5968089 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* C18-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Dkt. 10 at 3-8.

### A. Statutory Detention Authority

The Court first turns to identifying the statutory basis for Petitioner's detention. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("To determine whether Congress has authorized [petitioner's] detention, we must first identify the statutory provision that purports to confer such authority on the Attorney General. This requires that we locate [petitioner] within

the complex statutory framework of detention authority provided by Sections 236 and 241 of the Immigration and Nationality Act, codified at 8 U.S.C. §§ 1226 and 1231.")

In challenging the statutory basis for his detention, Petitioner does not take a position other than to assert he is "not subject to mandatory detention under 8 U.S.C. § 1225(b)." Dkt. 5 at 3. As noted, Respondents assert that Petitioner is mandatorily detained under § 1226(c) for having been convicted of a qualifying offense. Dkt. 10 at 4. Petitioner does not appear to challenge the Government's statutory classification under § 1226(c) in his reply and does not appear to assign legal error to the underlying conviction that serves as the statutory predicate mandating his detention. *See* Dkt. 14 at 6 (acknowledging this District's adoption of *Martinez* in assessing the lawfulness of detention under § 1226(c)). Instead, Petitioner appears to focus on his claim that due process entitles him to an individualized custody determination. *See generally* Dkt. 14.

In *Jennings v. Rodriguez*, the Supreme Court acknowledged that Section 1226(c)'s language on mandatory detention is clear:

> By allowing [noncitizens] to be released "only if" the Attorney General decides that certain conditions are met, that provision reinforces the conclusion that [noncitizens] detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. Together with § 1226(a), § 1226(c) makes clear that detention of [noncitizens] within its scope must continue "pending a decision" on removal. Section 1226(c) is thus not silent as to the length of detention. *See Demore v. Kim*, 538 U.S. 510, 529 [2003]. The provision, by expressly stating that covered [noncitizens] may be released "only if" certain conditions are met, also unequivocally imposes an affirmative prohibition on releasing them under any other conditions.

583 U.S. 281, 283 (2018).

In declining to read into § 1226(c) a statutory entitlement to periodic bond hearings every six months, the Court held that "§ 1226(c) mandates detention of any [noncitizen] falling within

its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the [noncitizen] is released for witness-protection purposes." *Id.* at 305-06.

Accordingly, to the extent Petitioner's statutory challenge to his detention is not construed as abandoned in his reply, it is foreclosed by the statutory language as reiterated in *Jennings*. The Court accordingly denies Petitioner's first claim for relief, Dkt. 5 at 3 ("Ground One") and now turns to whether due process affords him relief.

**B. Due Process and § 1226(c)**

As the parties have noted, courts in this District have adopted the *Martinez* test in assessing claimed prolonged detentions under § 1226(c). Dkt. 10 at 6-8; Dkt. 14 at 9, 14.

Under the *Martinez* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

2019 WL 5968089, at *9.

Although Petitioner cites *Martinez*, he does not discuss the test or apply it to his individual circumstances. *See* Dkt. 14 at 9, 14. Respondents apply the factors to Petitioner's circumstances and conclude they weigh in favor of the Government. Dkt. 10 at 6-8.

The first factor—the length of detention to date—is considered the most important. *Martinez*, 2019 WL 5968089, at *9. Petitioner's detention is approaching eight months, which is beyond the "brief" period assumed in *Demore*. *See Demore*, 538 U.S. at 529 (noting "in the majority of cases [detention] lasts for less than 90 days"); *see id.* at 530 ("In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is

invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal.”). This favors Petitioner.

The Court next “considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals.” *Martinez*, 2019 WL 5968089, at *9. Respondents contend “any projection would be speculative” and recognize Petitioner “has an administrative appeal pending before the BIA.” Dkt. 10 at 7. Petitioner filed his appeal with the BIA on July 17, 2026. In *Martinez*, the court noted that the “[p]etitioner [had] only recently filed his appeal of the IJ’s removal order with the BIA, which may take six months or longer to reach a decision[]” and would have the opportunity to seek review in the Ninth Circuit if the BIA affirmed. 2019 WL 5968089, at *9. The court then recognized that process would add an additional “12-20 months from the notice of appeal date.” *Id.* Petitioner’s circumstances are similar and thus weigh in favor of a bond hearing. *See id.*

The third and fourth factors consider “the length of detention compared to petitioner’s criminal sentence and the nature of his crimes.” *Id.* (citing *Cabral v. Decker*, 331 F. Supp. 3d 255, 262 (S.D.N.Y 2018)). These factors suggest whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262. Here, Petitioner’s immigration detention has exceeded the sentence imposed for his criminal conviction by approximately one and a half months. Respondents thus acknowledge this “third factor likely favors Petitioner.” Dkt. 10 at 7. As for the fourth factor, however, Respondents assert it favors the Government. *Id.* Respondents contend that § 1226(c) “only applies to certain criminal noncitizens that Congress has inherently deemed a danger to society or a flight risk” and that the Supreme Court has recognized that “Congress enacted mandatory

detention for certain criminal noncitizens as the outcome of bond hearings 'were too risky in some instances.'" *Id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 396 (2019)). Here, while the Court has little information about Petitioner's conviction, it is notable that Petitioner was convicted for making false statements in connection with the purchase of a firearm. Even with little information regarding the facts of Petitioner's criminal case, it is not unreasonable to assume the conviction implicates community safety concerns. The Court agrees this favors the Government.

The fifth factor considers the conditions of the NWIPC. *See Martinez*, 2019 WL 5968089, at *9. Neither party has provided evidence regarding the conditions of confinement, so the Court concludes this factor is neutral.

The sixth and seventh factors look to "the nature and extent of any delays in the removal proceedings caused by petitioner and the government, respectively." *Id.* at 10. Respondents point out that "Petitioner sought numerous continuances." Dkt. 10 at 8 (citing *Demore*, 538 U.S. at 531). The Court in *Demore* did appear to find relevant the fact that the "respondent himself had requested a continuance of his removal hearing" when acknowledging the length of his detention was "somewhat longer than the average." 538 U.S. at 530-31. In *Martinez*, however, the court recognized that a "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." 2019 WL 5968089, at *10; *see id*. (citing cases and distinguishing between "bone fide" arguments and those that are "frivolous," "dilatory," advanced in "bad faith," or that "sought to deliberately slow the proceedings"). Here, there is no evidence Petitioner sought continuances of his immigration proceedings for any reason beyond the fact that he was unrepresented, wished to prepare applications for relief, and desired the assistance of counsel.

*See* Subero Decl., ¶¶ 9, 11, 13. The Court does not find the nature of these continuances should weigh against a bond hearing but instead weigh neutral. As for delay attributable to the Government, there is no evidence that the Government caused delay, which also weighs neutral.

Finally, the Court considers the "likelihood that the removal proceedings will result in a final order of removal" and "whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *9 (citations omitted). Respondents contend this factor is neutral because it would be speculative to consider whether Petitioner's removal will be upheld given the appeal. Dkt. 10 at 8. The Court agrees. There is no information in the record regarding Petitioner's denied applications for relief and what arguments were raised on appeal. This factor weighs neutral.

In sum, three factors (including the weightiest) weigh in favor of a bond hearing, one favors the Government, and the remaining weigh neutral. The Court concludes that Petitioner's continued detention under § 1226(c) has become unreasonably prolonged in violation of due process. Petitioner is entitled to habeas relief.

Respondents acknowledge courts in this District order bond hearings when concluding a noncitizen's detention under § 1226(c) has become prolonged under *Martinez*. *See* Dkt. 10 at 8 (first citing *Juarez v. Wolf*, C20-1660-RJB-MLP, 2021 WL 2323436, at *8 (W.D. Wash. May 5, 2021), then citing *Maliwat v. Scott*, C25-0788-TMC, 2025 WL 2256711, at *9 (W.D. Wash. Aug. 7, 2025)). Although Petitioner seeks release from custody, he provides no authority for his request. *See generally* Dkts. 5, 14.

This Court agrees with Respondents that the proper remedy in this instance is a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *See Martinez*, 2019 WL 5968089, at *11 (collecting cases); *see also Martinez v. Clark*,

124 F.4th 775, 785–86 (9th Cir. 2024) (finding the BIA applied the correct legal standard in requiring the government to prove by clear and convincing evidence that a noncitizen detained under Section 1226(c) was a danger to the community); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020), *rev'd on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) (affirming decision requiring the government bear a heightened burden of proof at a bond hearing for a § 1231(a)(6) detainee as a matter of due process).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus, Dkt. 5, is GRANTED in part and DENIED in part.

(2) Within 14 days of this Order, Respondents must provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), at which the Government SHALL bear the burden of proof by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.

(3) Within fifteen days of this Order, Respondents SHALL file a status report with the Court either confirming that Petitioner received a bond hearing—and informing the Court of the results of that hearing—or confirming his release.

(4) Petitioner's request for injunctive relief, Dkt. 5 at 3, is DENIED as unbriefed.

Dated this 29th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge